## CHILDS v. ALEXANDER.

1. The Code of Procedure has not made things legally assignable which were not so before, but has only adopted in all the courts the practice formerly existing in the Court of Equity; and therefore it is only where an assignment, however evidenced, makes the assignee the real party in interest that such assignee must sue.

2. Where A. and B. purchase a bond and mortgage and then take in their own names a second mortgage on the same land to secure the same debt, and afterwards A. dies, B. alone may maintain an action of foreclosure, whether the money used by A. was her own or that of an estate of which she was executrix.

3. But where, under an order from B.'s administrator, the bonds and mortgages were delivered to C., as administrator *de bonis non* of the estate of B.'s testator, C., as such administrator, may in equity maintain an action of foreclosure, joining B. as a party defendant, he having declined to unite with C. as plaintiff.

4. A party may show that notes and mortgages taken in her individual name in reality represented funds of an estate of which she was executrix.

5. Interest alleged to be usurious having been paid to a national bank, the defence of usury cannot afterwards, in action by the assignee of such bank, be interposed as a defence *pro tanto*, *i. e.*, to the extent of the usurious interest so paid.

6. An outstanding claim of dower pending in suit is no ground for abatement of price in action brought by the vendor to foreclose the purchase money mortgage.

7. In counties where the office of master does not exist, the court may order a sale for foreclosure to be made by the sheriff.

Before FRASER, J., Chester, October, 1883.

This was an action for the foreclosure of two mortgages given by the same defendant on the same land to secure the same indebtedness. The action was commenced in February, 1883.

The cause was referred to A. G. Brice, Esq., as referee, who, after a statement of the facts to be found in the opinion of this court, reported as follows:

The first issue raised is as to the right of the plaintiff, as administrator *de bonis non* of R. A. Springs, to maintain this action. It is claimed by defendant, Alexander, that as his mortgage is made to S. Jane Conner, and signed by her under seal, the loan must have been out of her individual funds, and she

would be estopped from denying that the mortgage was her individual property. I thought admissible and received evidence to show that Mrs. Conner made the investment, and took the mortgage in trust for the estate of her testator. From the testimony of G. J. Patterson, who was Mrs. Conner's attorney, and acted for her in making the investment, and collecting a payment thereon, and from the fourth annual return of Mrs. Conner, as executrix, it appears that the $1,572 invested by her in the purchase of the Alexander note, was money belonging to the estate of her testator, and that the note and mortgage of Alexander were treated by her as an investment of the undistributed assets of said estate. And the mortgage and other papers in this case seem to have been delivered to the plaintiff as assets of the estate of R. A. Springs, by agreement with, and order of, the administrator of Mrs. Conner.

My conclusion is that the note and mortgage belong to the undistributed assets of the estate of R. A. Springs, and must have been received and held by Mrs. Conner as executrix for said estate. But the plaintiff is the guardian of his wife, who is the daughter and residuary legatee of Mrs. Conner, and by the agreement of the plaintiff with F. A. Conner, the administrator with the will annexed of Mrs. Conner, the note and mortgage herein, if they had been part of the individual estate of Mrs. Conner, have been delivered to plaintiff, and are held by him as a portion of her residuary estate, bequeathed to his wife and ward, so that in any event he holds the legal title in trust.

Giles J. Patterson, a joint mortgagee with Mrs. Conner in the mortgage made to them by Alexander, refused to join in the action as plaintiff; he was properly made a defendant, and the mortgage can be thus foreclosed and his interest in the mortgaged premises barred in this action.

The third issue raised is that the administrator of Geo. W. Melton is a necessary party to this action. This altogether depends upon the terms of the assignments from Melton to Clark and from Clark to Patterson. These assignments are absolute and unqualified, though they were made as an indemnity, and according to the rules laid down in Pomeroy's Remedies the administrator of Melton would not be a necessary party in this

action. It would only add to the costs of the case to bring him in as a party. The record in this action will show that Alexander's bond and mortgage to Melton have been fully exhausted under his assignment, and that the latter's administrator could not have any interest in it, which will be full protection to the defendant.

The rate at which the notes of Melton and Alexander were discounted in the Carolina National was fifteen per cent. per annum; the defendant alleges that this rate was usurious, and that the whole amount of interest so paid on these notes and their renewals can be offset or recouped in this action, and thus deducted from the plaintiff's claim.

[Here follows a quotation from the national banking act, citation of numerous authorities upon the subject of usury in discount by national banks, and the conclusion reached that the defence cannot prevail.]

The last issue raised is as to the right of the defendant to set off in this action the dower claimed by Mrs. Heald as breach of the covenant of warranty in Melton's deed to him for the mortgaged premises. Whenever dower is recovered against the defendant, there will be a plain breach of Melton's covenant of warranty to him, and this breach can be set up as an offset or counter-claim *pro tanto* in an action by the assignees, upon defendant's bond, given for the purchase money of the land. But the direct cause of action in this case is, not upon the bond for the purchase money, but upon Alexander's note, purchased from the bank, and his mortgage to Mrs. Conner and Patterson. For some purposes it might be regarded that Alexander had paid his bond and mortgage to Melton for the purchase money the time he made the new mortgage to Mrs. Conner and released the endorsers upon his note, and it would not have affected the rights of the parties to this action if that bond and mortgage had been then cancelled.

I therefore find as matters of fact:

1st. That the note and mortgage sued on are the property of the estate of R. A. Springs, deceased, and of the defendant, G. J. Patterson.

2d. That the defendant, G. J. Patterson, refused to join in this action as a plaintiff.

3d. That the rate of interest at which the Melton and Alexander notes were discounted at the Carolina National Bank was fifteen per cent. per annum.

4th. That the deed from Melton to the defendant, Alexander, for the mortgaged premises, contained the usual covenant of warranty, and that the bond of Alexander to Melton spoken of herein, was given for part of the purchase price of said premises.

5th. That one Mrs. Heald is now prosecuting an action for dower in a part of the mortgage premises.

And as matters of law:

1st. That the plaintiff, as administrator *de bonis non,* with the will annexed of R. A. Springs, can maintain this action.

2d. That G. J. Patterson, being an unwilling plaintiff, was properly made a party defendant.

3d. That the administrator of Geo. W. Melton is not a necessary party to this action.

4th. That though the interest paid by Geo. W. Melton and defendant, Alexander, to the Carolina National Bank upon their notes was illegal and usurious, it is now barred by the lapse of more than two years from the payment thereof, and cannot be recovered back, or offset in this action.

5th. That the claim of dower made by Mrs. Heald is not an offset or counter-claim to this action.

6th. That the amount due and unpaid on the note and mortgage of defendant, Alexander, at this date, is three thousand and seven hundred and forty-five and 18-100 dollars ($3,745.18), of which twenty-four hundred and fifty-three and 10-100 dollars ($2,453.10) is the property of the plaintiff, and the balance, twelve hundred and ninety-two and 8–100 dollars ($1,292.08), is the property of the defendant, Giles J. Patterson, and that the plaintiff and Giles J. Patterson are entitled to recover the respective amounts as aforesaid in this action.

To this report the defendant, Alexander, filed the following exceptions:

1. Because the referee admitted in evidence the fourth annual return of Mrs. Sarah J. Conner as executrix of R. A. Springs in order to contradict the recital of the mortgage made by C. H. Alexander to Giles J. Patterson and S. Jane Conner by showing

that said note and mortgage was in part the property of the estate of R. A. Springs, and not of Mrs. S. Jane Conner, and because he admitted the testimony of Giles J. Patterson for the same purpose.

2. Because the referee erred in finding as matter of law and fact, that the legal title to the note and mortgage of Alexander was in L. D. Childs, the plaintiff, as administrator *de bonis non*, with the will annexed, of the estate of R. A. Springs, in contradiction of the mortgage signed by Mrs. S. Jane Conner and G. J. Patterson.

3. Because the referee did not find that the legal title to said note and mortgage was in F. A. Conner, as administrator, with the will annexed, of Mrs. S. Jane Conner.

4. Because if said referee did not find that said note and mortgage was the property of the estate of Mrs. S. Jane Conner, that he did not then find that said note and mortgage had passed to her daughter, Mary Elizabeth Springs (now Childs, wife of the plaintiff), under the residuary clause of the will of Mrs. Conner.

5. Because referee found that the plaintiff in this action, as administrator of Springs, could maintain the action.

6. Because he found that if the plaintiff had not the legal title to the note and mortgage, as administrator of Springs, yet as guardian of his wife, Mary Elizabeth Childs, the residuary legatee, he was entitled to recover in his present form of action.

7. Because the referee erred in finding that Giles J. Patterson could be a party defendant in this action to foreclose the mortgage of C. H. Alexander to George W. Melton, of May 17, 1876, as the said bond and mortgage were assigned to Giles J. Patterson alone, and he is the only person entitled to prosecute the action as party plaintiff.

8. Because Giles J. Patterson not having answered the complaint, or claimed any affirmative relief in this action, has no right to recover in these proceedings.

9. Because the original note of George W. Melton discounted at the Carolina National Bank was $5,068.75—discounted for thirty days at 15 per cent., and the net proceeds of which being five thousand dollars, and the interest reserved being $68.75, the referee erred in not finding that the transaction was usurious

under the national bank law, and the taint of usury affected all the notes given in renewal of and substitution for the original note, and this defendant was entitled to recoup all of the illegal interest either renewed or paid to said bank.

10. That the referee erred in holding as matter of law, that under the national bank law, this defendant is barred from a recoupment of the usurious interest reserved by the Carolina National Bank from the amount of the defendant's bond and mortgage, because two years and more have elapsed since the usurious contract of lending was made.

11. Because the referee erred in not allowing the defendant to set up as a defence to the recovery in this action on the bond and mortgage of May 17, 1876, made by C. H. Alexander to George W. Melton, by him assigned to W. A. Clark, and by him assigned to G. J. Patterson, that the defendant holds a warranty title from George W. Melton to a house and lot in the town of Chester, covered by both mortgages sought to be foreclosed, and that an action has been commenced in the Probate Court against the defendant by Anna Heald for her dower in said house and lot, and that he erred in not allowing the defendant to set off against said bond for the purchase money of said lot in part, any recovery which may be had against him by said Mrs. Heald in said Probate Court.

The plaintiff also excepted to the referee's report, upon the ground that the referee erred in reporting and finding that a national bank in this state during the years 1876 and 1877 could not lawfully charge or receive a higher rate of interest than 7 per cent. per annum, even when the contract for specific interest of a higher rate was reduced to writing and signed by the party to be charged therewith.

The Circuit decree upon these exceptions was as follows:

This case was heard by me at the term of the Court of Common Pleas held for Chester County in October, 1883. The case came up on a report of A. G. Brice, special referee, and exceptions filed by plaintiff and the defendant Alexander, the co-defendant Patterson not having answered the complaint.

The exceptions of the defendant Alexander will be considered first, and in the order in which they are stated. The exceptions

really are not taken to the findings of facts by the referee, but to the legal effects of the facts set out in the report. The facts are so fully set out that it is not important to re-state them here.

Exception 1. It appears to me to be clearly competent to show, by the acts and declarations of Mrs. Conner, that a bond, note, or mortgage held by her in her life-time, and payable to her individually in whole or in part, was in fact, as to so much thereof as was so held, an investment of funds belonging to the estate of R. A. Springs, of whose will she was executrix; or, that having been originally an investment of her own funds, they were set apart by her as an investment for the estate. This exception is overruled.

Exceptions 2 and 3. Even if Mrs. Conner had been the owner of these claims at her death in her own right, and not as executrix, it was entirely competent for her executor, F. A. Conner, to turn them over on a settlement to the plaintiff as administrator *de bonis non cum test. annexo* of R. A. Springs, in payment for funds held by her in her life-time for that estate. This transfer would be a sufficient title for plaintiff in this action. These exceptions are overruled.

Exception 4. If these claims had ever been the property of Mrs. Conner, and had been given in her will to her daughter, Mrs. Childs, the title of the latter would not be complete until there is an *assent to the legacy* by the executor, of which there is no proof. This exception is overruled.

Exception 5. This exception has been disposed of above, and is overruled.

Exception 6. This exception would have been well taken if plaintiff had no other valid title on which to stand, as neither Mrs. Childs nor the plaintiff, as her guardian, has shown any title to the property, except as she may be interested in it as legatee.

Exceptions 7 and 8. I regard it as clearly established by the evidence in the case, that the mortgage of Alexander to Geo. W. Melton was assigned to W. A. Clark, as collateral security to himself and others, as endorsers on the original note, and that the same was transferred by W. A. Clark to Patterson for the purpose of securing himself and Mrs. Conner, who had taken up the original note, the note having been transferred to them by the

bank; the bond and mortgage held as security passed with it, as a matter of course, unless there was some agreement to the contrary; the only proper way, therefore, when Patterson refused to become a party plaintiff, was to make him a defendant, as has been done here, and the court is bound to adjudge to him all the rights which are established in his favor, even if he fails to answer. These exceptions are overruled.

Exceptions 9 and 10. The usurious interest complained of in these exceptions has already been *paid* to the bank, and the defendant, Alexander, now proposes to set up the amount as *pro tanto* a defence against the note in the hands of the assignees of the bank, and in an action to which the bank is not a party. I regard this question as definitely settled in the recent case of *Driesback* v. *Nat. Bank*, and *Stark* v. *Nat. Bank*, 104 *U. S.*, 52. The Supreme Court of the United States in these cases says "this cannot be done." These exceptions are overruled.

Exception 11. It is claimed that there ought to be an abatement on the claims in consequence of a suit for dower now pending in favor of a Mrs. Heald, the wife of one who had been seized of the mortgaged premises, before Melton bought and conveyed to Alexander. The authorities referred to by counsel do not sustain his position. In *Polk* v. *Sumter*, 2 *Strob.*, 81, the action was for specific performance, and in *Jeter* v. *Glenn*, 9 *Rich.*, 381, and *Lewis* v. *Lewis*, 5 *Rich.*, 12, there had been an eviction, before suit brought on the warranty. In *Whitworth* v. *Stuckey*, 1 *Rich. Eq.*, 409, Chancellor Harper says: "The law courts, it is said, will not grant an abatement of price, in such case, in a suit for the purchase money. I have no doubt that the decisions of the law courts were perfectly correct, but with proper deference, I think the *dicta* of some of the judges, that relief will be afforded in *equity* are founded on a mistaken view. Relief is to be afforded in no court, because there is no grievance."

It is to be remembered, however, that there are, in this case, two mortgages of the same land—one given originally to Melton, who warranted the title to Alexander, and one given by Alexander subsequently on the same land, and to secure the same debt in the hands of Mrs. Conner, and the defendant Patterson, who had no more to do with Melton's warranty than with the warran-

ty of any other land Alexander may have owned, and which in the same way he may have mortgaged to secure this debt. This exception, therefore, is overruled; having held that the interest paid to the bank on these notes cannot be set up as a defence in this action, it is not necessary to consider whether it was or was not usurious under the act of Congress.

It is therefore ordered and adjudged, that the report of the referee be confirmed, so far as it affects the rights of the plaintiff and the defendant Patterson, to recover under the mortgages in this case. It is further ordered and adjudged, that the mortgaged premises described in the complaint in this action, or so much as may be sufficient to pay the amount reported to be due, with interest thereon, and the sum of —— dollars, costs, and the expenses of sale, be sold by the sheriff of Chester County, after due advertisement, on sales day in February next, etc.

To this decree defendant Alexander excepted upon the same grounds substantially as were taken in his exceptions to the referee's report, with the additional exception that "his honor erred in ordering the land sold by the sheriff of Chester County, and not by the clerk of the court for said county."

*Mr. S. P. Hamilton,* for appellant.

*Mr. T. C. Gaston,* contra.

February 24, 1885. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. The facts of this case, so far as is necessary to the proper understanding of the judgment herein, are as follows: George W. Melton, in May, 1876, discounted his note in the Carolina National Bank of Columbia, for the sum of $5,068.75, receiving a net amount of $5,000, the interest for thirty days from date, at fifteen per cent., amounting to $68.75, having been added to and embraced in the note. The note was payable to J. E. Curtis & Co., and was by them endorsed, with the defendant, Alexander, Robison & Atkinson, I. L. Gunhouse, and W. A. Clark as second, third, fourth, and fifth endorsers. This note was afterwards renewed by Melton at thirty days. At the time of the discount, Melton pledged as

collateral a bond and mortgage on C. H. Alexander for $5,000, executed by Alexander on the purchase from Melton of a tract of land situate in Chester County and a house and lot in the town of Chester, which property was covered by said mortgage.

Melton died in July, 1876, before his renewal note fell due. On January 3, 1877, W. A. Clark, one of the endorsers on Melton's note and the attorney of the bank, received from Alexander on the Alexander bond, held as collateral as above stated, the sum of $2,149, which, after being credited thereon, was applied to the Melton note, first to the accrued interest and discount amounting to $423.28, and the balance, $1,725.70, to the principal, leaving a balance thereon of $3,274.30. This last note was taken up or renewed by Alexander on March 29, 1877, at sixty days, with interest at 15 per cent., the discount amounting to $77.75, which was paid in cash. This was again renewed on May 3, 1877, maturing July 5 thereafter, on which day it was again renewed at sixty days for $3,274.70, maturing October 6, at 15 per cent., the discount amounting to $126.85, paid in cash.

Several payments were then made by Alexander, when finally it was transferred on November 3, 1877, to G. J. Patterson, upon his paying to the bank the balance then due, *i. e.*, $2,400. This payment was made by Patterson, as it appears, out of funds belonging partly to himself and partly to Mrs. S. J. Conner, wife of F. Conner, in the proportion of $828 to $1,572. The note was delivered by the bank to Patterson, for himself and Mrs. Conner, as executrix of her former husband, Richard Springs; but there was no written assignment endorsed or made. Some days after this transfer to Patterson—*i. e.*, on November 10, 1877—Alexander recognized the transfer, and to secure payment of the note to Mrs. Conner and Patterson, executed to them a mortgage of the tract of land and house and lot embraced in the prior mortgage to Melton, mentioned above, in which it was stated that Mrs. Conner and Patterson had purchased the bank note in the proportion of $828 by Patterson and $1,572 by Mrs. Conner; that Clark had transferred and assigned to Patterson, for himself and Mrs. Conner, the bond and mortgage of Alexander to Melton, held by the bank as collateral, in consideration of which the endorsers had been released, and that it was agreed

between the parties that payment of the principal of said bank note now held by Patterson and Mrs. Conner should be postponed until November 3, 1879, with interest at 12 per cent. from the day of the purchase, to be paid annually. This mortgage containing these recitals was executed by Alexander and was signed "S. J. Conner, by Patterson & Gaston, attorneys," and by Giles J. Patterson, all under seal. On the bond and mortgage of Alexander to Melton several endorsements appeared, one from Melton assigning them to W. A. Clark, and others signed by Clark, the first acknowledging that he held them as collateral to the bank note of Melton, one crediting the payments made by Alexander, and a third assigning the papers to Patterson as collateral to the note purchased by Patterson from the bank.

Some time after this transaction, Mrs. Conner died testate, and her husband administered with the will annexed. At the time of her death she was executrix of her former husband, Richard A. Springs. She left surviving her a daughter by her first husband, who some time before her death had intermarried with the plaintiff, Lysander D. Childs. Upon the death of Mrs. Conner, Childs administered with the will annexed on the estate of the said Springs. Some controversy arising between F. Conner and Childs as to the assets of the two estates which they respectively represented, it was finally agreed between them that the papers in the hands of Patterson & Gaston, attorneys for Mrs. Conner in her life-time, should be turned over to Childs; or at least Conner gave to Childs an order on these attorneys for all notes, bonds, and mortgages, and other choses in action, money or other assets belonging either to the estate of R. A. Springs or to that of Mrs. Conner, under which order the note and two mortgages now in suit, with other assets, were delivered to Childs, who soon thereafter instituted the action below, in his name.

In the complaint it is stated that Patterson having refused to unite as plaintiff, was therefore made a defendant. It was also stated that the interest of S. J. Conner in the bond and mortgage sued on had been duly assigned, transferred, and delivered to the plaintiff, Childs, as administrator, and that he was the legal and real owner thereof. It was further stated that the plaintiff and Giles J. Patterson were the owners and holders of

the bond and mortgage which had been held by W. A. Clark, as collateral to the Melton note, and which had been assigned by Clark to Patterson, and the plaintiff demanded judgment against the defendant, that both mortgages be foreclosed, that the premises be sold and the proceeds be applied to the payment of the note and costs, and in case said proceeds proved insufficient, then that execution issue in favor of the plaintiff and the said Patterson against the said C. H. Alexander for the balance. Patterson failed to answer.

The case was referred to A. G. Brice, special referee, whose report was excepted to by both sides. At the trial, testimony was offered by the plaintiff to prove that the funds of Mrs. Conner used by Patterson in the purchase of the note sued on belonged to the estate of her former husband, Richard A. Springs, and that the purchase was an investment by her as executrix of said estate. This testimony was objected to by the defendant as contradicting the recitals in the mortgage of Alexander to Mrs. Conner and Patterson, which, as we have stated, had been signed by all of the parties.

The defendant relied upon the following defences: 1st. That Lysander D. Childs, as administrator *de bonis non* of Richard A. Springs, had no legal title to either of the bonds and mortgages mentioned in the pleadings, but that Patterson was the legal owner, holding as trustee of an express trust for the benefit of Mrs. Conner during her life, and after her death for her daughter, Mrs. Childs, her legatee, and that he alone could sue. 2d. That the note sued on, as well as the original note from which it sprang, was usurious, and that C. H. Alexander had been sued for dower in the house and lot purchased from Melton, which suit was then pending; and he demanded (1) that the complaint be dismissed, but failing in this, that then John J. McLure, administrator of Melton, should be made a party; (2) that the amount of the usurious interest in the notes be ascertained and deducted from the recovery; and (3) that the defendant be allowed the right to set off any recovery that may be decreed against him by the Probate Court in the pending dower suit, and for such other and further relief as shall be meet.

Upon hearing the report of the referee, with the exceptions

thereto, the Circuit judge held that the action as brought with Childs as plaintiff and Patterson as defendant could be maintained. He further held that the testimony introduced by plaintiff as to the investment by Mrs. Conner of estate funds was competent, and upon the merits he ruled that whether the notes were usurious or not, yet the alleged usurious interest having been paid to the bank, could not now be set up against the assignee of the bank; relying on *Driesback* v. *National Bank* and *Stark* v. *National Bank*, 104 *U. S.*, 52. He also ruled that the pending dower suit could not be interposed; and he ordered and adjudged that the report of the referee, so far as it affected the rights of the plaintiff Childs and the defendant Patterson, be confirmed; that the mortgaged premises be sold by the sheriff, the proceeds to be applied, after payment of costs, to the claims of the plaintiff and the defendant Patterson, according to the amounts found due them respectively, the balance, if any, to be paid to the defendant Alexander. The appeal assigns error to these rulings and holdings, with the additional ground that his honor erred in ordering the land to be sold by the sheriff instead of the clerk.

Did the plaintiff have the right to maintain the action as brought? is the first question. At common law actions on contracts could be brought only by the person having the legal title thereto, and as a contract at common law, was regarded as a mere right to go to law, and as that law forbade the sale of a mere right to sue, it followed that no one but the party with whom the contract was made could enforce it by action; and therefore in general, upon all contracts, whether express or implied, whether by parol, or under seal, or of record, the action, if action was necessary, had to be brought in the name of the original payee or obligee, whether the contract has been assigned or not. True, in negotiable paper payable to order or bearer, an apparent exception was made allowing the action to be brought in the name of the endorsee or bearer; this, however, was allowed, not so much as an exception, but rather in accordance with the original rule, because when the note in its terms was made payable to order or bearer, whoever became endorsee or bearer, became at the same time the promisee, and consequently the legal owner. But notwithstanding this common law rule which was invariably

enforced in the Courts of Common Pleas, yet the practice in equity was always different, and the rule prevailed there that the assignee, who was regarded as the real party in interest, could sue in his own name. And by special act in certain contracts the action might be brought in the name of the assignee or assignor as the parties might elect, even in the Common Pleas.

Thus stood the law in our state when the code was adopted in which it was provided (with certain exceptions) that every action must be prosecuted in the name of the real party in interest. What was the intention of this provision? It was certainly not the intent that in all the cases where the real and beneficial interest was in one and the legal title in another, that the action must, or even could, be brought in the name of the real party in interest. Because if such was the imperative requirement in every such case, as Mr. Bliss says, great inconvenience would often arise, and representative and express trusts might be practically destroyed. For example, as he further says : "An administrator has less interest in collecting the assets than a creditor or distributee, yet he *must* bring the action; and there are many other cases where if the beneficiary, who is the real party in interest, could bring the action in his own name, he might, against the will of the trustee, and contrary to the objects of the trust, be able to control the property and destroy the trust."

So that the code, in our opinion, when it provided and enacted in general terms that "every action must be prosecuted in the name of the real party in interest," except as otherwise provided therein (§ 132), was intended to apply principally to the cases of assignments of contract, or rather to rights of action capable of assignment, and in that way to meet the difficulty which existed at common law, where, as we have seen, the assignee, although after assignment to him he was in truth the real and only party in interest, yet could not sue in his own name. In other words, this section of the code was intended to adopt in all the courts the practice which formally prevailed in the Court of Equity on this subject. The code, however, has not gone to the extent of making things legally assignable which were not so before, but it simply declares that when a transfer or an assignment has been made, which in equity has the effect of making

the assignee the real party in interest, that then such assignee must sue. Whether such an assignment has been made or not in a special case is always a question of fact, which may be evidenced by a written endorsement or assignment on the paper, or it may be shown by other competent testimony. It may be made, too, on a separate paper, by a verbal sale, or by manual delivery.

Now apply these principles to the facts of this case with reference to the note of C. H. Alexander, purchased by Patterson, and the mortgage subsequently executed by Alexander to Mrs. Conner and Patterson to secure the same. There was no written assignment of the note by the bank to any one. It appears, however, from the testimony that it was purchased by funds which belonged respectively to Mrs. Conner and Patterson, and that it was delivered to Patterson for himself and Mrs. Conner, thereby making Patterson and Mrs. Conner the real parties in interest, and therefore under the code entitled to sue in their own names; and they were named as the obligee and promisee in the mortgage of Alexander to them. Had the action then been commenced in the life-time of Mrs. Conner, unless brought in the name of the two, it would have been defective and demurrable, except that if either one refused to unite as plaintiff, the party refusing might have been made a defendant under the code.

But Mrs. Conner died before suit brought; what was then the interest of the parties? Under the old practice and authorities there can be no doubt that upon the death of Mrs. Conner the whole interest survived and became vested in Patterson, who, at common law, could alone have been recognized as entitled to recover, with a responsibility thrown upon him to settle with the representatives of the deceased. Such being the case, the representative character of neither Childs nor F. Conner would give either of them the right to unite in the suit with Patterson; because, supposing that the funds invested by Mrs. Conner in the note and mortgage to have belonged to her personally, or as executrix of Richard A. Springs, her death severed her connection and left Patterson as survivor, the holder of these papers.

Childs, however, does not claim by virtue of his representative character. True, he sues as administrator of Richard Springs,

but he claims by assignment to him as such administrator of the interest of Mrs. Conner. Has he shown such an assignment? The evidence on that subject is, that the bank note, with the mortgage, were delivered to him as administrator *de bonis non* of Richard Springs, by Patterson & Gaston, attorneys of Mrs. Conner, under an order from F. A. Conner, administrator of Mrs. Conner. After this delivery the action was commenced, Childs alleging in his complaint that he is the owner of the interest of Mrs. Conner and of the interest of Richard Springs, the same having been duly assigned and transferred to him as administrator *de bonis non;* and Patterson in his testimony admits the right of Childs as claimed. This seems to be sufficient evidence of the assignments, but then it is an assignment of only a part of the note and mortgage, *i. e.,* Mrs. Conner's portion.

Under this state of facts, a question arises, what is the effect of a partial assignment of a contract, note, or mortgage, as to the right of action in the parties interested? Can the contract be split in this way so as to make the debtor liable to two or more actions and against his consent? We think not, nor could, under the old practice, the partial assignee, so to speak, have joined in the suit with the assignor, and this principle is still adhered to in some of the states, even where the code has been adopted. *Cable* v. *St. Louis Marine Railway & Dock Co.*, 21 *Mo.*, 133. But in equity such an assignee was regarded as having an equitable interest, which, under the equity practice, could be enforced in the courts of equity, the assignor and debtor both being made parties, just as, before the code authorized the real party in interest in assignments of an entire contract to sue at law, equity had allowed such assignee to sue in equity. We see no reason, then, why under the code, since all distinction between law and equity as to the mode of procedure has been abolished, a partial assignee may not join with the assignor, in pursuit of his partial interest, as well as to sue alone when the whole contract has been transferred to him, especially as one of the objects of the code, in establishing but one mode of procedure, was to bring into operation the equity practice as far as practicable in all courts and actions.

This seems to be the law in some of the states where the code

has been adopted, notably in Indiana and California (*Lapping* v. *Duffy*, 47 *Ind.*, 51; *Grain* v. *Aldrich*, 38 *Cal.*, 514; *Bliss, Code Pl.*, § 65), and we can see no legal objection to it, and it is applicable as well to the Alexander-Melton mortgage embraced in the suit, as to the other papers, all of them having been delivered by Patterson to Childs under the same circumstances.

Under this view of the case it is unnecessary to discuss the competency of the testimony excepted to, as whether the funds invested by Mrs. Conner belonged to the estate of her husband or to herself, makes no difference. But even if this testimony was material, there can be no reason growing out of the doctrine of estoppel, or any established rule of evidence, why such testimony should be excluded.

Next, as to the usurious interest. The Circuit judge declined to discuss this question, holding as he did, under the cases referred to, 104 *U. S. Reports*, that the interest alleged to be usurious having already been paid to the bank, the defence of usury could not now be set up against an assignee of the bank. The cases relied on by the Circuit judge seem to be clear and definite on this point; it is needless therefore to prolong this opinion by a discussion of the question of the fact of usury.

Finally, an abatement is claimed on account of the pending suit for dower before eviction. We need not do more in reference to this than to cite the case of *Whitworth* v. *Stuckey* (1 *Rich. Eq.*, 409), where Chancellor Harper, in delivering the opinion of the court in a similar defence before eviction, said: "The law courts will not grant an abatement of price in such case, in a suit for the purchase money. I have no doubt," says he, "that the decision of the law courts was perfectly correct, but with proper deference, I think the *dicta* of some of the judges that such relief will be afforded in equity are founded on a mistaken view. Relief is to be afforded in no court, because there is no grievance."

The last exception assigns error to the sale of the premises ordered to be made by the sheriff, the appellant contending that the clerk should make the sale. In the General Statutes, chapter entitled "County Sheriff," the following sections are found: "Sec. 691. All judicial sales shall be made by the sheriff, unless otherwise provided by law," &c. "Sec. 692. In all sales by said

sheriff under the order of Courts of Common Pleas, or under the order of the Courts of Probate, the fees of said sheriff shall be the same as now fixed by law for sales under executions issuing from Courts of Common Pleas." The phrase in the above section "judicial sales" certainly meant other sales than those by execution, because many of the foregoing sections in this chapter in prescribing the duties of the sheriff, had already provided for sales by execution, and these two sections, if they stood alone, in the absence of any other act providing otherwise, would be construed to mean that all sales made by direct order of the court (and in that sense judicial), would be made by the sheriff.

In the code, however, are found other sections, which certainly leave the question in considerable doubt, if not producing absolute uncertainty. Section 307 of the code provides, "that in all sales under order of the court, where the title is to be made by the clerk of the court, such sales shall be made by the clerk; all other judicial sales shall be made by the sheriff." And "in those counties where the office of master exists, the master shall make all sales ordered by the court in cases granting equitable relief, conformable to the practice of the Circuit Courts or to the practice of the Courts of Equity of this State before said courts were abolished." Now, section 691 of the General Statutes, *supra,* providing as it does that all judicial sales shall be made by the sheriff, *unless otherwise provided by law,* evidently intended and supposed that in such sales (judicial) the legislature might make other provisions; but until this was done the sheriff should sell.

Section 307 of the code, *supra,* has made other provision, but to what extent has it changed the previous act? Section 691 is the difficulty. It says first, that in all sales ordered by the court, where title is to be made by the clerk of the Circuit Court, the clerk shall make the sale. Second, that all other judicial sales shall be made by the sheriff, as now provided by law. And third, that in counties where masters exist, the master shall make all sales ordered by the court, in granting equitable relief. The change made, then, consists in requiring the clerk to sell where the clerk is to make the titles, and the master to sell where a sale is ordered by the court in a case granting equitable relief. In all other judicial sales, the sheriff is to sell as now provided by law,

*i. e.,* as provided in section 691, General Statutes, *supra.* The question of the sale by the master is not involved here, as there was no master in Chester County, but the difficulty arises upon the change above which declares that the clerk shall make the sale where he is to make the titles.

When is the clerk to make titles? We know of no distinct class of cases in which by positive law the clerk is required to execute the titles. If there was such a law, and it covered a case of this kind, a sale under foreclosure proceedings, then it would be clear that the order of the judge directing the sheriff to sell would be error, but in the absence of such a law it would seem as if the sheriff was bound to sell under section 691 of the General Statutes, as that section expressly declares that in all judicial sales, unless otherwise provided by law, the sheriff should sell. We suppose it would be competent for a Circuit judge to order titles to be made by the clerk, in any sale made under a Circuit decree, and in such case the clerk should make the sale under section 307 of the code, *supra ;* but in the absence of such order as to titles, and of any law defining when the clerk shall make. titles, as matter of law, it would seem that the sheriff is the proper officer to make the sales in counties where the office of master does not exist. The Circuit judge did not direct the clerk to make titles below. The best that we can make, therefore, of the sections of the acts applicable to the question discussed is that there was no legal error in his ordering the sale to be made by the sheriff.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.